UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. |
| v. | ) |
| **05  1123 5 MLW** | ) |
| PHILIP N. CHIOTELLIS, M.D. and | ) |
| CARDIAC REHABILITATION  MAGISTRATE JUDGE | ) |
| OF CAPE COD, INC., | ) |
| | ) |
| Defendants. | ) |

RECEIPT #_____
AMOUNT $_____
SUMMONS ISSUED____
LOCAL RULE 4.1____
WAIVER FORM ____
MCF ISSUED____
BY DPTY. CLK._____
DATE_____

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, the United States of America, on behalf of its Department of Health and Human

Services, alleges as set forth below.

1.      The United States alleges violations of the civil False Claims Act, as amended, 31

U.S.C. §§ 3729 et seq., and violations of the common law giving rise to causes of action for

unjust enrichment, fraud, and payment by mistake, and seeks from defendants Philip N.

Chiotellis, M.D. ("Chiotellis") and Cardiac Rehabilitation of Cape Cod, Inc. ("CRCC") damages,

civil penalties, disgorgement of illegal profits, an accounting, prejudgment interest and other

legal and equitable remedies available to this Court.

## **JURISDICTION AND VENUE**

2.      This Court has subject matter jurisdiction over this action pursuant to 31 U.S.C. §

3732(a), 28 U.S.C. § 1331, and 28 U.S.C.§ 1345.

3.      This Court has personal jurisdiction over defendant Chiotellis because he resides

in this district and engaged in wrongdoing in this district.

1

4.     This Court has personal jurisdiction over defendant CRCC because its principal

place of business was located within this district, and it submitted claims to the United States

from this district.

5.     Venue is proper in this district under 31 U.S.C. § 3732(a) and 28 U.S.C. §§

1391(b) and (c); CRCC conducted business in this district; Chiotellis conducts business in this

district and resides in this district; and acts proscribed by 31 U.S.C. § 3729 occurred in this

district.

## PARTIES

6.     Plaintiff is the United States of America ("United States") on behalf of its agency,

the Department of Health and Human Services ("HHS").

7.     Defendant Chiotellis is a physician who resides in Osterville, Massachusetts and

at all relevant times has practiced medicine in Massachusetts. During the relevant time period,

Chiotellis was the owner and primary physician of CRCC. His Medicare provider number is

B11452.

8.     Defendant CRCC was a corporation that provided cardiac rehabilitation services

and during the relevant time period had its principal place of business at 50 Park Street, Hyannis,

MA 02601. Its Medicare provider number was M15286.

## INTRODUCTION

9.     The allegations in this complaint generally arise out of the following area of

illegal conduct carried out by Chiotellis and CRCC starting in 1995: fraud and/or false claims

submitted to Medicare in connection with the misrepresentation of health care services provided

and the use of inappropriate higher reimbursing Current Procedural Terminology ("CPT") codes

2

for those services.

## LEGAL FRAMEWORK

10.     In 1965, Congress enacted title XVIII of the Social Security Act, 42 U.S.C. §§ 1395, et seq. ("Medicare" or the "Medicare Program"), to pay for the cost of certain medical services for persons aged 65 and older, and for persons with disabilities.

11.     HHS is an agency of the United States and is responsible for the funding, administration and supervision of the Medicare Program. The Centers for Medicare and Medicaid Services ("CMS"), formerly known during portions of the relevant time frame here as the Health Care Financing Administration ("HCFA"), is a division of that agency that is directly responsible for the administration of the Medicare Program and, in discharging those responsibilities, contracts with private insurance companies, known as "carriers" and "fiscal intermediaries," to receive, review, and pay appropriate claims for reimbursement for the provision of services to Medicare Program beneficiaries. 42 U.S.C. § 1395u.

12.     Medicare has two parts: Part A (Hospital Insurance) and Part B (Medical Insurance). Medicare Part A helps pay for hospitalization costs, services rendered by skilled nursing facilities, home health and hospice care. Medicare Part B helps pay for physician services, outpatient hospital care, and some other medical services such as physical and occupational therapy. 42 U.S.C. §§ 1395j - 1395w-4.

13.     In Massachusetts, CMS contracts with National Heritage Insurance Company ("NHIC"), a Medicare contractor, to process Medicare Part B claims submitted for physician services. Blue Cross Blue Shield ("BCBS") was the previous Medicare contractor.

14.     Congress gave the Secretary of HHS broad statutory authority to "prescribe such

3

regulations as may be necessary to carry out the administration of the insurance programs. . . ."
42 U.S.C. §1395hh(a)(1).

15.    The Administrator of CMS implements provisions prescribed by the Secretary of HHS.

16.    Congress also gave the Secretary of HHS the power to formulate rules for the administration of Medicare programs, through the issuance of manual instructions, interpretive rules, statements of policy, and guidelines of general applicability. 42 U.S.C. §1395hh(c)(1).

17.    Pursuant to this power, the Secretary of HHS has formulated rules, issued instructions and adopted a coding system.

18.    Health care providers for Medicare use a uniform coding system to report and receive reimbursement for professional services, procedures, and supplies.

19.    For all purposes relevant to this action, Medicare adopted the American Medical Association's Physicians' Current Procedural Terminology ("CPT") Code Book. CPT codes are five digit codes with descriptive terms and identifying codes for reporting services performed by health care providers.

20.    In the forward to the CPT Book, the American Medical Association states that:
"[t]he purpose of the terminology is to provide a uniform language that will accurately describe medical, surgical, and diagnostic services, and will thereby provide an effective means for reliable nationwide communication among physicians, patients, and third parties."

21.    Medicare uses this coding system because it is designed to give providers "a common language that accurately describes the kinds and levels of services provided and that can serve as a basis for coverage and payment determinations." 42 C.F.R. §405.512.

4

22.     CMS reimburses health care providers such as Chiotellis and CRCC through the
CPT coding system. These codes provide various levels of reimbursement based on the services
provided.

23.     In order to be reimbursed by Medicare, a provider of health care must become a
"provider" for that program and enter into a "provider agreement" with the United States.

24.     Effective February 1, 1974, Chiotellis entered into a provider agreement with the
United States for the Medicare program. CRCC became a Medicare provider in January, 1991.

25.     Chiotellis and CRCC were required to comply with the Medicare statutes and
regulations and the CPT Code Book when submitting claims for reimbursement to Medicare.

26.     Medicare providers have a legal duty to familiarize themselves with Medicare's
reimbursement rules, including those stated in the Medicare Manuals. Heckler v. Community
Health Services of Crawford County, Inc., 467 U.S. 51, 64-65 (1984).

27.     To submit claims electronically, Medicare providers execute an Electronic Data
Interchange Enrollment Form which contains several provisions including one that states:
"anyone who misrepresents or falsifies or causes to be misrepresented or falsified any record or
other information relating to that claim that is required pursuant to this Agreement may, upon
conviction, be subject to a fine and/or imprisonment under applicable Federal law."

28.     The assignment of improper CPT codes to claims submitted to the Medicare
program for reimbursement is a misrepresentation to the United States, as to the services
provided and appropriate reimbursement due.

29.     Upcoding is the improper assignment of a code to claims submitted to the
Medicare Program in order to increase the amount of reimbursement that a  health care provider

5

receives.

30.     From 1995 through 2001, all of CRCC's billings to CMS were submitted with the
CPT code 93015. During the relevant time period, the CPT Code Book defined code 93015 as
"[c]ardiovascular stress test using maximal or submaximal treadmill or bicycle exercise,
continuous electrocardiographic monitoring, with interpretation and report." See Exhibit A.

31.     A cardiovascular stress test is typically performed once as a diagnostic procedure
before starting the patient on a cardiac rehabilitation program.

32.     Cardiac rehabilitation is a supervised and monitored exercise program intended to
improve the conditioning of a patient with an established heart condition. The Medicare
Coverage Issues Manual section 35-25 states that cardiac rehabilitation may be considered
reasonable and necessary for up to thirty-six sessions in a twelve week period.

33.     The 1990 edition of the CPT Book lists the CPT codes, 93797 and 93798, as the
codes for outpatient cardiac rehabilitation. See Exhibit A.

34.     In 1990, a Medicare B newsletter published by BCBS, introduced new CPT
codes, 93797 and 93798, for cardiac rehabilitation. See Exhibit B.

35.     A 1998 NHIC newsletter discussing cardiac rehabilitation references 93797 and
93798 as the proper CPT codes for this service. See Exhibit C.

36.     Cardiac rehabilitation is billed under CPT codes 93797 for the service without
continuous electrocardiogram monitoring and 93798 for the service with continuous
electrocardiogram monitoring.

37.     Generally, NHIC's Medicare reimbursements for cardiac rehabilitation are
significantly lower than the amount of reimbursements for a cardiovascular stress test.

6

## FACTUAL ALLEGATIONS

### A. Chiotellis Had the Intent and Knowledge to Defraud Medicare Through Upcoding

38.     In 1985, Chiotellis owned  Echocardiographic Laboratory of Hyannis ("Echo"),

which was located at 52 Park Street, Hyannis, MA.

39.     Echo was a Medicare Part B provider and performed cardiac rehabilitation

services.

40.     Prior to 1990, there was no CPT code for cardiac rehabilitation services.  During

this time period, the Medicare Part B carrier for Massachusetts was BCBS, which used a local

code, Y9006, to reimburse for cardiac rehabilitation.

41.     In 1990, a Medicare B newsletter published by BCBS introduced new CPT codes,

93797 and 93798, for cardiac rehabilitation.

42.     During this time period, Chiotellis and Echo did not regularly use

Y9006, 93797 or 93798 when billing Medicare for cardiac rehabilitation services.  Instead,

Chiotellis and Echo used the stress test CPT code 93015.

43.     During 1985 through 1991, Medicare's billing records for Echo indicate that, on

average, the stress test CPT code 93015 was billed more than ten times per patient per year.

Typically, a patient will undergo no more than one stress test per year.

44.     Echo's records further show that Chiotellis knew the proper codes for cardiac

rehabilitation therapy.  In 1989, Chiotellis billed code Y9006, the BCBS local code for cardiac

7

rehabilitation, six (6) times, and in 1990, at the time the new CPT codes, 93797 and 93798 were introduced, Chiotellis and Echo billed CPT code 93798 forty-nine (49) times. Chiotellis and Echo received the reimbursement payments for these billings from BCBS.

45.     In the spring of 1990, Chiotellis and Echo resumed using the stress test code 93015 to bill for cardiac rehabilitation services.

46.     By briefly using 93798, the correct code for cardiac rehabilitation services, Chiotellis demonstrated that he knew the correct code to bill, and furthermore demonstrated that he knew that CPT code 93015 was an improper billing code for such services. Despite this knowledge, Chiotellis recommenced billing Medicare with the stress test code with the intent to capitalize on code 93015's higher reimbursement rate.

### B. Chiotellis Upcodes at Cardiac Rehabilitation of Cape Cod, Inc.

47.     During the relevant time period, CRCC provided cardiac rehabilitation services. . However, from 1995 through 2001, all of its billings for cardiac rehabilitation were submitted to the Medicare program under the cardiovascular stress test CPT code 93015.

48.     CRCC did not perform cardiovascular stress tests.

49.     In 2001, the NHIC conducted a review of medical services billed by Chiotellis and CRCC under the stress test code of 93015 and found that the claims were not supported by medical record documentation.

50.     The carrier audited 1742 cardiovascular stress tests billed by Chiotellis and CRCC and determined that in each instance the actual service provided was outpatient

8

cardiac rehabilitation (CPT code 93797), a much lower reimbursing service.

51.     In 1995, Medicare reimbursed Chiotellis and CRCC for 2,781 services under code 93015. The total paid amount was $249,393.43 for services not performed as billed.

52.     In 1996, Medicare reimbursed Chiotellis and CRCC for 3,376 services under code 93015. The total paid amount was $324,559.92 for services not performed as billed.

53.     In 1997, Medicare reimbursed Chiotellis and CRCC for 2,867 services under code 93015. The total paid amount was $264,825.55 for services not performed as billed.

54.     In 1998, Medicare reimbursed Chiotellis and CRCC for 2,535 services under code 93015. The total paid amount was $245,614.68 for services not performed as billed.

55.     In 1999, Medicare reimbursed Chiotellis and CRCC for 2,366 services under code 93015. The total paid amount was $226,683.89 for services not performed as billed.

56.     In 2000, Medicare reimbursed Chiotellis and CRCC for 2,288 services under code 93015. The total paid amount was $219,920.47 for services not performed as billed.

57.     In 2001, Medicare reimbursed Chiotellis and CRCC for 2,391 services under code 93015. The total paid amount was $233,269.08 for services not performed as billed.

58.     The total sum of Medicare's overpayments to Chiotellis and CRCC from 1995 through 2001 was $1,764,267.05 for 18,604 services not performed as billed.

59.     From 1995 through 2001, the NHIC did not identify any billings submitted by Chiotellis or CRCC under the proper CPT codes for cardiac rehabilitation, 93797 and 93798.

60.     In November, 2001, Chiotellis and CRCC became aware of the government's

9

investigation. Immediately after, Chiotellis and CRCC ceased billing Medicare.

61. Defendants have executed statute of limitations waivers effectively waiving

statute of limitations defenses, to the extent that any existed.

## COUNT ONE

### False Claims Act, 31 U.S.C. § 3729(a)(1)

### (Knowingly Presenting or Causing to be Presented a False or Fraudulent Claim)

62. Plaintiff realleges and incorporates herein by reference each and every allegation

set forth in Paragraphs 1 through 61.

63. Chiotellis and CRCC knowingly presented, or caused to be presented, to officers,

employees, or agents of the United States Government false or fraudulent claims for payment or

approval in the form of all billings under the CPT code 93015.

64. By virtue of the false and fraudulent claims made or caused to be made by

Chiotellis and CRCC, the United States has suffered damages and therefore is entitled to multiple

damages under the False Claims Act, to be determined at trial, plus a civil penalty of $5,000 to

$10,000 (or $5,500 to $11,000 for violations after September 1999) for each such false or

fraudulent claim presented or caused to be presented by Chiotellis and CRCC.

## COUNT TWO

### False Claims Act, 31 U.S.C. § 3729(a)(2)

### (Making, Using, or Causing to be Made or Used a False Record or Statement)

65. Plaintiff realleges and incorporates herein by reference each and every allegation

set forth in Paragraphs 1 through 64.

10

66.    Chiotellis and CRCC knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by the United States in the form of all billings for CPT code 93015.

67.    By virtue of the false and fraudulent claims made or caused to be made by Chiotellis and CRCC, the United States has suffered damages and therefore is entitled to multiple damages under the False Claims Act, to be determined at trial, plus a civil penalty of $5,000 to $10,000 (or $5,500 to $11,000 for violations after September 1999) for each such false or fraudulent claim presented or caused to be presented by Chiotellis and CRCC.

## COUNT THREE
### Common Law Fraud

68.    Plaintiff realleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 67.

69.    Chiotellis and CRCC knowingly and intentionally made or caused to be made false statements or omissions of material facts to the Medicare carrier, and thus to the United States, with knowledge of their falsity and with fraudulent intent, to mislead the United States, and upon which the United States reasonably relied upon to its detriment.

70.    In reliance on false statement and omissions by Chiotellis and CRCC, the United States has suffered damages in an amount to be determined at trial.

## COUNT FOUR
### Payment by Mistake

71.    Plaintiff realleges and incorporates herein by reference each and every allegation

11

set forth in Paragraphs 1 through 70.

72.    This is a claim for recovery of monies paid by the United States to Chiotellis and CRCC by mistake.

73.    The false or fraudulent claims which Chiotellis and CRCC submitted or caused to be submitted to agents of the United States constituted misrepresentations of material facts, as did the statements or omissions of material facts made by defendants to the Medicare carrier, and thus to the United States.

74.    The United States, acting in reasonable reliance upon the accuracy and truthfulness of the information contained in the claims, and other representations made to the Medicare carrier, paid the defendants certain sums of money to which they are not entitled to, and are thus liable to account for and pay such amounts, which are to be determined at trial, to the United States.

## COUNT FIVE
### Unjust Enrichment

75.    Plaintiff realleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 74.

76.    This is a claim for the recovery of monies by which Chiotellis and CRCC has been unjustly enriched.

77.    As a result of the facts alleged in this Count, defendants have received and have continued to maintain control over certain monies to which they are not entitled.

78.    By directly or indirectly obtaining Government funds to which they were not

12

entitled, defendants were unjustly enriched and are liable to account for and pay such amounts, or the proceeds therefrom, which are to be determined at trial, to the United States.

## COUNT SIX
### Disgorgement of Illegal Profits and an Accounting

79.    Plaintiff realleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 78.

80.    By this claim the United States requests a full accounting of all revenues (and interest thereon, including prejudgment interest) from Chiotellis and CRCC and disgorgement of all profits from the conduct described herein.

81.    Chiotellis and CRCC made or caused to be made false, fictitious or fraudulent statements, reports and claims to the United States to conceal the illegal revenues that were generated from monies obtained from the Medicare Trust Fund.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that judgment be entered in favor the United States and against the defendants as follows:

A.    On Counts One and Two under the False Claims Act, as amended, for multiple of the amount of the United States' damages and civil penalties as are required by law, together with such further relief as may be just and proper.

B.    On Counts Three, Four, Five, and Six for the damages sustained, plus interest including prejudgment interest, costs, disgorgement, an accounting, and such further relief as may be just and proper.

13

## **REQUEST FOR TRIAL BY JURY**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff hereby demands a

trial by jury.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:     *Patricia M. Connolly*

Patricia M. Connolly
Assistant U.S. Attorney
U.S. Attorney's Office
One Courthouse Way, Suite 9200
Boston, MA 02210

Dated:    June 16, 2005

14



**Cardiovascular 92982---93204**

(For thromboylsis of vessels other than coronary, see 75896, 75897)

**92982** Percutaneous transluminal coronary angioplasty; single vessel

**92984** each additional vessel

**CARDIOGRAPHY**

(For echocardiography, see 93300-93320)

**93000** Electrocardiogram, routine ECG with at least 12 leads; with interpretation and report

**93005** tracing only, without interpretation and report

**93010** interpretation and report only

(For ECG monitoring, see 99150, 99151)

**93012** Telephonic or telemetric transmission of electrocardiogram rhythm strip;

**▲93014** physician review with interpretation and report only

**93015** Cardiovascular stress test using maximal or submaximal treadmill or bicycle exercise; continuous electrocardiographic monitoring, with interpretation and report

**93017** tracing only, without interpretation and report

**93018** interpretation and report only

**93024** Ergonovine provocation test

**▲93040** Rhythm ECG, one to three leads; with interpretation and report

**93041** tracing only without interpretation and report

**93042** interpretation and report only

(93045 has been deleted. To report, use 93615)

**93201** Phonocardiogram with ECG lead; with supervision during recording with interpretation and report (when equipment is supplied by the physician)

**93202** tracing only, without interpretation and report (eg, when equipment is supplied by the hospital, clinic)

**93204** interpretation and report

**Cardiovascular—Non-Invasive Vascular Studies 93760—93860**

**93760**  Thermogram; cephalic

**93762**  peripheral

**93770**  Determination of venous pressure

(For central venous cannulization and pressure measurements, see 36488-36491, 36500)

(93780, 93781 have been deleted)

**93784**  Ambulatory blood pressure monitoring, utilizing a system such as magnetic tape and/or computer disk, for 24 hours; including recording, scanning analysis, interpretation and report

**93786**  recording only

**93788**  scanning analysis with report

**93790**  physician review with interpretation and report

(93791-93796 have been deleted. To report, see 93731-93736)

### OTHER PROCEDURES

● **93797**  Physician services for outpatient cardiac rehabilitation; without continuous ECG monitoring (per session)

● **93798**  with continuous ECG monitoring (per session)

**93799**  Unlisted cardiovascular service or procedure

# Non-Invasive Vascular Diagnostic Studies

Vascular studies include patient care required to perform the studies, supervision of the studies and interpretation of study results with copies for patient records of hard copy output or imaging when provided.

### CEREBROVASCULAR ARTERIAL STUDIES

**93850**  Non-invasive studies of cerebral arteries other than carotid (eg, periorbital flow direction with arterial compression, periorbital photoplethysmography with arterial compression, ocular plethysmography with brachial blood pressure, ocular and ear pulse wave timing, vertebral arteries flow direction measurement)

**93860**  Non-invasive studies of carotid arteries, non-imaging (eg, phonoangiography with or without spectrum analysis, flow velocity pattern evaluation, analog velocity wave form analysis, diastolic flow evaluation)



Blue Cross
Blue Shield
of Massachusetts

# Medicare B Newsletter

August 1990

## Inside

Important Changes in Medicare ............... 3
Performing (Rendering) Physician Identification
Numbers ........................... 3
EMC Rendering Physician Information ..... 4
Important Medicare Telephone Numbers ... 4
Suspension of 14 Day Payment Floor ......... 4
PRO Prior Approval ...................... 5
ICD-9-CM Diagnosis Coding ............... 5
Bills Involving Medical Assistant Recipients .. 6
Fair Hearings ........................ 6
Ambulance Medical Necessity Forms ........ 6
Ambulance Procedure Code A0150 ......... 7
Attn: Portable X-Ray Suppliers, Independent
Clinical Laboratories, Physical Therapists and
ASCs ............................... 7
Attn: Ambulatory Surgical Centers ......... 7
Nurse Practitioners ...................... 7
Ventilation Assist and Management ......... 7
Endothelial Cell Photography ............. 8
Contrast Sensitivity Testing .............. 8
Oculinum Injections .................... 8
Special Ophthalmological Procedures ....... 8
Screening Pap Smears .................... 9
Cardiac Rehabilitation ................. 10
Surgical Aftercare .................... 10
Methotrexate by Injection .............. 10
Intracardiac Electrophysiological Procedures 10
Suture Removal ...................... 10
Art Therapy ......................... 10
Electroencephalograms ................ 11
DME Repairs ........................ 11
DME - Air Fluidized Bed .............. 11-12
Independent Laboratory Update ........ 13-15

## MANDATORY CLAIMS SUBMISSION BY PHYSICIANS AND SUPPLIERS

Section 6102 of the Omnibus Budget Reconciliation Act of 1989 (P.L. 101-239) requires all physicians and suppliers to submit claims to Medicare carriers for services furnished on or after September 1, 1990. The following Questions and Answers were developed by the Health Care Financing Administration to help clarify the requirements contained in this provision of law.

Q. To whom does the mandatory claim filing requirement apply?

A. The mandatory claim filing requirement applies to all physicians and suppliers who provide covered services to Medicare beneficiaries.

Q. When is the physician/supplier claim filing requirement effective?

A. The physician/supplier mandatory claim filing requirement is effective for covered Part B services and supplies performed or provided on or after September 1, 1990.

Q. May physicians and suppliers charge beneficiaries for completing and/or filing Medicare claims?

A. Physicians and suppliers may not charge the beneficiary for completing or filing a Medicare claim on their behalf.

continued on page .

## DIAC REHABILITATION

When billing for cardiac rehabilitation services, procedure codes 93797 (physician services for outpatient cardiac rehabilitation; without continuous ECG monitoring, per session) or 93798 (with continuous ECG monitoring, per session) in a free-standing cardiac rehabilitation facility, the place of service code should be identified as 0 (zero), other location. If the services are rendered in a hospital-based cardiac rehabilitation facility, use place of service code 2, outpatient hospital.

## SURGICAL AFTERCARE

The development of profiles for major surgical procedures includes an allowance for any postoperative treatment which the procedure normally warrants. It is our policy that medical care billed on the same day and 4 days subsequent to major inpatient surgery is included in the surgery fee.

## METHOTREXATE BY INJECTION

*Procedure Codes J9250 and J9260*

Methotrexate is generally administered as an oral medication and as such is not covered under Medicare B. However, Methotrexate administered by injection for the treatment of rheumatoid arthritis in the physician's office is covered provided the beneficiary cannot tolerate oral preparations. Physicians should document this by adding a statement such as "Patient unable to tolerate oral Methotrexate" in Item 24C of the HCFA-1500 claim form.

## INTRACARDIAC ELECTROPHYSIOLOGICAL PROCEDURES

Intracardiac electrophysiological procedures no longer require the use of modifiers YE or YF.

Procedure code 93603-YE must now be reported as procedure code 93620 (Comprehensive electrophysiological evaluation).

Procedure code 93603-YF must now be reported as procedure code 93624 (Electrophysiological follow-up study).

## SUTURE REMOVAL

*Reminder*

In our June 1989 Newsletter you were advised that procedure code T1070, suture removal, was deleted. Do not use this code. To identify this procedure, the lowest medical care code (e.g., 90000, 90030, 90100, 90130, etc.) should be used. The removal of sutures by the operating physician should not be submitted as a separate charge as an allowance for this service is included in the surgical fee.

### ART THERAPY

Art Therapy is not covered under Medicare B. Therapies or activities which are primarily recreational or diversional in nature are not covered. Claims for Art Therapy which may have been paid in the past were paid in error.

## PROGRAM SAFEGUARDS

## Focused Medical Review

NHIC is required to perform focused medical review (FMR) based on statistical aberrancies identified through national and local data analysis. The reviews identify overutilization and inappropriate Medicare payments. Below are procedure codes statistically aberrant based upon claims paid between January 1, 1997 and June 30, 1997. If you are aware of any factors that would cause utilization of these procedures to be aberrant, please contact us.

| Code | Description * |
|------|---------------|
| 90804 (replaces G0071) | Individual psychotherapy, 20 to 30 minutes face-to-face with the patient |
| 90805 (replaces G0072) | Individual psychotherapy, 20 to 30 minutes face-to-face with the patient; **with medical evaluation and management services** |
| 90806 (replaces G0073) | Individual psychotherapy, 45–50 minutes face-to-face with the patient |
| 90807 (replaces G0074) | Individual psychotherapy, 45–50 minutes face-to-face with the patient; **with medical evaluation and management services** |
| 90816 (replaces G0083) | Individual psychotherapy, 20–30 minutes face-to-face with the patient |
| 90818 (replaces G0085) | Individual psychotherapy, 45–50 minutes face-to-face with the patient |
| 33533 | Coronary artery bypass, using arterial graft(s); single arterial graft |
| 66984 | Extracapsular cataract removal with insertion of intraocular lens prosthesis (one stage procedure), manual or mechanical technique |
| 92226 | Ophthalmoscopy, extended, with retinal drawing, with interpretation and report |
| 92235 | Fluorescein angiography (includes multiframe imaging) with interpretation and report |
| 92506 | Evaluation of speech, language, voice, communication, auditory processing, and/or aural rehabilitation status |
| 92557 | Comprehensive audiometry threshold (92553 and 92556 combined) |
| 93307 | Echocardiography, transthoracic, real-time with image documentation (2D) with or without M-mode recording; complete |
| 93526 | Cardiac Catheterization: Combined right heart catheterization and retrograde left heart catheterization |
| 99263 | Follow-up inpatient consultation |
| J1561 | Injection, immune globulin, intravenous, 500 MG |
| R0070 | Transportation of portable xray equipment and personnel to home or nursing home |

**\*Please refer to *CPT-4 '98* for a complete description.**

## Cardiac Rehabilitation Programs

The Medicare Coverage Issues Manual (CIM) Section 35-25 provides specific guidelines for coverage of services within cardiac rehabilitation programs. Section 35-25 states: "Medicare coverage of cardiac rehabilitation programs are considered reasonable and necessary only for patients with a clear medical need, referred by their attending physician, and (1) have a documented diagnosis of acute myocardial infarction in the preceding 12 months; or (2) have had coronary bypass surgery; and/or (3) have stable angina pectoris." Accordingly, cardiac rehabilitation, CPT-4 procedure codes 93797 and 93798 (physician services for outpatient cardiac rehabilitation) are only covered for ICD-9-CM diagnosis codes 410.00 through 413.9, and V45.81.

Section 35-25 also states: "Services provided in conjunction with a cardiac rehabilitation exercise program may be considered reasonable and necessary for up to 36 sessions, usually three (3) sessions a week in a single 12-week period. Coverage for continued participation in cardiac exercise programs beyond 12 weeks would be allowed only on a case-by-case basis with exit criteria taken into consideration." Thus, if more than 36 sessions in a 12-week period of either 93797 or 93798 are performed, documentation supporting medical necessity of more frequent sessions is required. Report modifier 22 on the claim form and attach supporting documentation. Further, if a cardiac rehabilitation program exceeds 12 weeks, all services beyond week 12 should be submitted with modifier 22 and supporting documentation. If documentation is not provided, claims will be denied.

When claims are accompanied by acceptable documentation indicating the patient has not reached an exit level, coverage may be extended, but should not exceed a maximum of 24 weeks.

Listed is criteria used to establish medical necessity for extra services beyond a 12-week period:

- the patient has not achieved a stable level of exercise tolerance without ischemia or dysrhythmia;
- symptoms of angina or dyspnea are not stable at the patient's maximum exercise level;
- patient's resting blood pressure and heart rate are not within normal limits; or
- the stress test is positive during exercise (a positive test in this context implies an ECG with a junctional depression of 2mm or more associated with slowly rising, horizontal, or downsloping ST segment).



February/March 1998

Medicare B

*Health Resource*

Information for Providers in Maine, Massachusetts, New Hampshire, and Vermont

## Message From the Medical Director

As expected, 1998 is becoming one of the busiest years for both the Health Care Financing Administration and this carrier due to numerous changes to the Medicare program contained within the Balanced Budget Act of 1997. The Health Care Financing Administration has about 34 proposed rules under development, 46 final rules, and 41 long-term actions affecting the program. This carrier continues to be inundated with HCFA Program Memoranda from all of these new regulations.

For providers, the news is mixed. The good news is that some of this increased activity is due to the extension of a variety of screening services to beneficiaries (see pages 4, 5, 8, and 9), however, much of this activity results from congressional and HCFA concerns about fraud, waste, and abuse in the Medicare program, and is taking steps to guard against these improprieties. In her Senate confirmation hearings, HCFA's new Administrator, Nancy-Ann Min DeParle, Esq., said: "We must continue - and sharpen - our focus on fraud, waste, and abuse in Medicare and Medicaid. The Balanced Budget Act gave us some new weapons to use in that fight, but it is clear that we must become even more aggressive in our program integrity efforts."

This 'aggression' will become more obvious to providers over the course of this year. As a result of the 1997 CFO Audit findings of a 14% improper billing rate in the Medicare program, a number of corrective actions have been launched:

- Monthly Evaluation and Management Reviews: Beginning October 1997, HCFA instructed carriers to randomly audit all evaluation and management services billed on a particular day. If your claims are part of this audit, you will be asked to submit medical record documentation for the service(s) billed to the Medicare program.

- Monthly Prepayment Reviews: HCFA asked carriers to choose services to review on a prepayment basis each month. In January 1998, this carrier established prepayment reviews of ambulance and psychiatry services.

Finally, as noted in the December 1997 *Medicare B HealthResource*, the implementation date for the new "Documentation Guidelines for Evaluation and Management Services" is July 1, 1998. The 6-month interim period between now and July 1st should be used to bring your recordkeeping practices in accordance with these new guidelines and to direct any complaints about the guidelines to your specialty society, American Medical Association, Practicing Physicians Advisory Council, or the Health Care Financing Administration itself. Modifications to these guidelines are highly likely given the ground swell of opposition to their adoption.

Michael T. Myers, Jr, MD, MBA
Medical Director, Medicare Programs

JS 44 (Rev. 3/99) **CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
UNITED STATES OF AMERICA

## DEFENDANTS
PHILIP CHIOTELLIS, M.D. and
CARDIAC REHABILITATION OF CAPE COD, INC.

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed    Barnstable
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney'S (Firm Name, Address, and Telephone Number)
Patricia M. Connolly, AUSA
U.S. Attorney's Office
1 Courthouse Way - Suite 9200, Boston, MA 02210
(617) 748-3278

Attorneys (If Known)
Thomas S. Crane, Esq.
Mintz Levin Cohn Ferris Glovsky & Popeo, PC
One Financial Center, Boston, MA 02111
(617) 542-6000

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S Government Defendant

☒ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES   (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury – Med. Malpractice<br>☐ 365 Personal Injury – Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC<br>☐ 630 Liquor Laws<br>☐ 640 R.R & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/Exchange<br>☐ 875 Customer Challenge 12 USC 3410 |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS - Third Party 26 USC 7609 | ☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions |

## V. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgement

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

False Claims Act, as amended, 31 U.S.C. 3739, et seq.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☐ No

## VIII. RELATED CASE(S)   (See instructions):
IF ANY
JUDGE _____    DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 06-16-2005 | *Patricia W. Connolly* |

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

This form was electronically produced by Elite Federal Forms, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)  United States of America v. Philip N. Chiotellis, M.D., et al. D.

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL
   COVER SHEET.  (SEE LOCAL RULE 40.1(A)(1)).

    __   I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    _X_  II.    195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
    740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    for patent, trademark or copyright cases

    __  III.    110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
    315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
    380, 385, 450, 891.

    __  IV.    220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
    690, 810, 861-865, 870, 871, 875, 900.

    __  V.    150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE
   HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.
   None

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS
   COURT?

    YES ☐    **X** NO

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE
   PUBLIC INTEREST?   (SEE 28 USC §2403)

    YES ☐    **X** NO

    IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?

    YES ☐    NO ☐

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE
   28 USC §2284?

    YES ☐    **X** NO

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE
   COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE
   SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).

    **X** YES    NO

    A.    IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

    **X** EASTERN DIVISION  CENTRAL DIVISION ☐    WESTERN DIVISION ☐

    B.    IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING
    GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?

    EASTERN DIVISION  CENTRAL DIVISION ☐    WESTERN DIVISION ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME ____ Patricia M. Connolly

ADDRESS ___ U.S. Attorney's Office, One Courthouse Way, Suite 9200, Boston, MA 02110

TELEPHONE NO. __(617) 748-3278

(CategoryForm.wpd - 11/27/00)